

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. AP-75,964

### EX PARTE SPENCER OJEIFO IMOUDU, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS FROM BEXAR COUNTY

**KELLER, P.J., filed a dissenting opinion.**

The trial court finds that counsel was not ineffective; I would defer to that finding. We normally defer to such findings, and the finding is supported by the record.[1] The Court criticizes defense counsel for failing, after witnessing bizarre behavior by applicant, to investigate whether applicant was insane at the time of the offense and to review applicant's jail medical records. But the fact that applicant "was suffering from some mental problems"[2] is not necessarily any indication that he was legally insane at the time the offense was committed. Legal insanity involves a failure

---

[1] *Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008)(This Court usually defers to trial judge's findings on habeas corpus when those findings are supported by the record).

[2] Court's op. at 7.

to appreciate the illegality of one's conduct,[3] and very few people with mental illness are actually legally insane.

The record shows, and the trial court's findings reflect, that applicant's bizarre behavior did lead defense counsel to request a competency examination. Dr. John Tennison examined applicant and found him to be competent to stand trial. Dr. Tennison further found that applicant understood the meaning of a plea of not guilty by reason of insanity.

At the competency hearing, applicant testified in some detail about the events surrounding the incident that was the basis for his prosecution. This is his recollection of the event:

> [APPLICANT] Okay, Juan was out, you know, with the car running and I was in the parking lot plaza over here southeast. The car was started and I went inside the car, got inside the passenger's seat and then I went to the driver's seat and then I sped off the parking lot and then I went to, like, the freeway, the highway exit, and I was in traffic. And then when I exited the highway, I kept going straight. I was on the freeway and I kept on going straight. And then they said that there was a T-bone collision. By that time, Juan already followed me. He got into another car. He was hitchhiking. Well, not hitchhiking. He got into another car and he was chasing me. They were on the phone trying to get the police. By the time the accident happened, the police, they showed up.

Applicant acknowledged on cross-examination that he stole Juan's car. He also testified about matters such as his memory of the wreck, where he was working before the wreck, and his treatment at the hospital for the broken leg he sustained during the wreck. He acknowledged that he had "a good recollection of all that." Applicant's testimony coincided with the actual events of that day. There is absolutely nothing in his testimony to suggest in any way that he was divorced from reality at the time of the accident, that he thought demons were chasing him, or that he was unaware that he acted illegally when he stole Juan's car. If applicant's attorney had actually pursued an insanity

---

[3] *See Ruffin v. State*, 270 S.W.3d 586, 592 (Tex. Crim. App. 2008)(A person is insane only if he does not know his conduct is "wrong," and by "wrong" Texas law means "illegal").

defense, I think that applicant's own testimony showing that he knew exactly what was going on during the offense would provide decent grounds for claiming his attorney was ineffective for adopting a strategy that was bound to lose.

Further, in connection with his guilty plea – at which time applicant was competent – he signed a waiver and admonishments form that included the statement that he was "legally sane at the time that this offense was committed."

Given these circumstances, defense counsel had no reason to further investigate whether applicant was insane at the time of the offense. There was no evidence that counsel was aware of the existence of, or possible existence of, jail records reflecting possible schizophrenia or otherwise suggesting that applicant might have been insane at the time of the offense. And the evidence that counsel did have indicated that applicant was in fact sane at the time of the offense, and that the best strategy was to obtain a favorable plea agreement, which counsel was able to do.

And even if the jail records are considered, I would defer to the trial court's findings with respect to those records. The Court relies upon the testimony of applicant's expert witness, Dr. Brener. The trial court found that Dr. Brener claimed that jail records "suggested" schizophrenia during a separate incarceration for criminal mischief seven months before this offense. It was Dr. Brener's opinion that applicant had a chronic, psychotic mental illness – "probably" schizophrenia – on the date of the offense. Dr. Brener believed that applicant was probably schizophrenic, that he was actively schizophrenic on the date of the offense, that when a schizophrenic does not take his medication his capacity to discern right from wrong becomes compromised, and that *if* applicant was schizophrenic *and* not taking his medication on August 1, 2005, his mental condition deteriorated, contributing to his aberrant judgment. According to Dr. Brener, given the "likelihood" that applicant

was psychotic and paranoid when he stole the car, his psychosis and paranoia "probably" were exacerbated during the case, causing him to believe that someone was trying to kill him.

There are several problems with relying on Dr. Brener's opinion. First, it is dependent upon a number of assumptions: "if" applicant was schizophrenic and "if" he was not taking his medication, there was a "likelihood" that he was psychotic and this psychosis was "probably" exacerbated.

Second, the trial court found Dr. Brener's opinion "questionable" because it appeared that he did not personally examine applicant and did not review any medical records other than those from the jail.

Third, the trial court found that that the crux of applicant's claims (and thus Dr. Brener's conclusion) appeared to be based entirely on jail records from the earlier incarceration for criminal mischief, and the trial court made additional findings that those jail records did not point to a diagnosis of schizophrenia.  Applicant's intake records for the earlier criminal mischief offense showed no indication that applicant was a mental health risk.  Further, those records indicated that he had never received MH-MR services and that he answered correctly the questions posed to him. Intake personnel did not see any signs of mental problems.  Progress notes during that incarceration showed some increasing bizarre mannerisms, but nowhere is there a physician's diagnosis of schizophrenia. The court found that applicant's attorney for that offense was credible when she said that applicant never appeared to be in an altered state and he never gave her the impression that he was unable to distinguish right from wrong.

Fourth, the trial court made findings about applicant's incarceration after the current offense that are inconsistent with the view that he might have schizophrenia.  The hospital notes taken after

the current offense show that applicant was awake and alert. Two days after the offense, when he was discharged from the hospital, he answered "no" to the question of whether he had or ever had had "nervous problems, mental problems or treatment." It wasn't until five days after the offense that notes indicate "possible mental problems." As the months passed, applicant showed signs of increasing mental problems.[4]

Finally, counsel had other information that applicant was not insane when he committed the current offense that would militate against any possible indication of insanity in the jail records. Counsel had the benefit of personal interaction with applicant and of applicant's testimony at the competency hearing. The testimony at the competency hearing seems especially probative because applicant gave a lucid account of events but, contrary to Dr. Brener's speculation, did not say he thought someone was trying to kill him.

I do not think counsel's performance was substandard, but even if he were found to have performed deficiently in failing to investigate the issue of insanity, applicant fails on the prejudice prong of an ineffective assistance claim. To prevail, applicant needs to demonstrate a reasonable probability that an insanity defense would have succeeded. For reasons discussed above, he has not done so. His expert's testimony was speculative and given without the benefit of a personal examination. Applicant's testimony at the competency hearing convincingly supports a conclusion

---

[4] The trial court found that the jail record notation "R/O" meant "ruled out," so that the notation "R/O Schizophrenia" meant that schizophrenia had been ruled out. The trial court explained that its interpretation of the "R/O" notation was verified by Theresa Scepanski, Vice President over Detention Health Care Services at University Heath Systems. The trial court further found that Dr. Brener's opinion diagnosing schizophrenia was "questionable" because Dr. Brener misconstrued the notation "R/O." Dr. Brener's opinion assumed that R/O meant "rule out," leaving schizophrenia as a possibility until it is ruled out. I express no opinion on whether this particular finding of the trial court was correct.

that he knew his conduct was illegal and that he was not laboring under any sort of mental delusion when he stole the car.  Applicant will now have an opportunity to try out his insanity defense.  Given the improbability of success, and given the plea bargain his "ineffective" attorney was able to obtain for him, applicant may end up being sorry he ever complained.

       I respectfully dissent.

Filed: June 3, 2009
Publish